AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| United States of America<br><br>Plaintiff<br><br>v.<br><br>JAIME GARZA,<br><br>Defendant. | Case No. **2:24-mj-04285-DUTY** |

**LODGED**
CLERK, U.S. DISTRICT COURT
JUL 18 2024
CENTRAL DISTRICT OF CALIFORNIA
BY: _____rsm_____ DEPUTY

**FILED**
CLERK, U.S. DISTRICT COURT
7/18/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: _____clee_____ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of July 16, 2024, in the County of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of Ammunition |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____/s/ Hugo Pang, ATF Special Agent_____
Complainant's signature

_____Hugo Pang, ATF Special Agent_____
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____July 18, 2024_____   _____[signature]_____
Judge's signature

City and state: _____Los Angeles, California_____   _____U.S. Magistrate Judge Steve Kim_____
Printed name and title

AUSA: Jason A. Gorn x7962

**AFFIDAVIT**

I, Hugo Pang, being duly sworn, declare and state as follows:

### I.   PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of a criminal complaint against and arrest warrant for Jaime GARZA ("GARZA") for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of Ammunition.

2.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show only that there is probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only. Further, all dates and amounts are approximations, and the words "on or about" and "approximately" are omitted for clarity.

### II.   BACKGROUND OF ATF SPECIAL AGENT HUGO PANG

3.   I am a sworn Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since December 2023. I am a graduate of the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia and have completed specialized training at the ATF National Academy's Special Agent Basic Training course. I have received training in federal

1

firearms and narcotics laws, narcotics identification, confidential source handling, and various surveillance and investigative techniques. I am currently assigned to the ATF Los Angeles Field Division, Los Angeles Group I Field Office, in Los Angeles, California.

4. Prior to becoming an ATF Special Agent, I was employed with the Los Angeles Police Department ("LAPD") for approximately eight years. During my tenure at the LAPD, I was a patrol officer at the Central, Hollywood and Rampart Divisions. I conducted numerous firearms, narcotics, gang and violent crime investigations and arrests. As part of my tenure as an LAPD officer, I also became familiar with the illicit way firearms and controlled substances are acquired, distributed, and sold.

### III.   SUMMARY OF PROBABLE CAUSE

5. On July 16, 2024, GARZA brandished a firearm and shot at three LAPD officers inside of an unmarked police vehicle, striking the vehicle's front tire. After a brief pursuit, GARZA was apprehended nearby. A privately manufactured, Glock-style 9mm pistol was recovered, that was discarded by GARZA during the pursuit. The pistol was loaded with one round of 9mm ammunition, and a magazine loaded with three additional rounds of 9mm ammunition was located adjacent to the firearm. A spent 9mm shell casing and one live 9mm round of ammunition were recovered from the area where GARZA shot at the officers. An ATF nexus expert evaluated the ammunition and determined it was manufactured outside of the State of California.

6.      As discussed below, GARZA has a significant criminal history that includes approximately six felony convictions and a misdemeanor conviction for domestic violence.

### IV.     STATEMENT OF PROBABLE CAUSE

7.      Based on my review of law enforcement reports, criminal history reports, video surveillance, conversations with other law enforcement agents and my own knowledge of the investigation, I am aware of the following:

**A.     GARZA shoots at undercover LAPD officers that were surveilling him in anticipation of a traffic stop.**

8.      On or about the evening of July 16, 2024, at approximately 9:53 p.m., LAPD Newton Division Officers Cordero, Burgos, and Clay were conducting a patrol, in plain clothes and in an unmarked police vehicle, in the area of Pico Blvd. and San Julian St. in Los Angeles, California, due to an increase in burglaries, thefts from motor vehicles and other property crimes in the area. The LAPD Officers were inside of a Toyota Rav 4. Officer Cordero was driving, Officer Burgos was in the front passenger seat, and Officer Clay was in the back seat.

9.      The LAPD Officers were driving westbound on Pico Blvd., approaching Wall St. when they saw GARZA wearing a black hat, black jacket, grey shirt and a black satchel bag, riding an orange and black electric bicycle eastbound on Pico Blvd. towards Wall St. on the south side of the Pico Blvd. LAPD Officers observed GARZA riding the bicycle in the hours of darkness without lighting equipment, in violation of Section 21201(d) of the California Vehicle Code. As the LAPD Officers

drove past GARZA, GARZA turned his body towards the LAPD Officers' vehicle while grabbing the black satchel bag with his right hand.

10. LAPD Officers communicated for a marked patrol unit to assist in conducting a vehicle stop on GARZA for the traffic violation. GARZA proceeded to conduct a northbound turn onto San Julian St. from Pico Blvd. LAPD Officers negotiated a U-turn to the last known location of GARZA, in an attempt to maintain visual contact of GARZA. As the LAPD Officers entered the intersection of Pico Blvd. and San Julian St., LAPD Officers saw GARZA draw a firearm from his black satchel bag and fire in the direction of the LAPD Officers' vehicle. Among other things, LAPD Officers observed a red muzzle flash, and recognizing it as gunfire, proceeded to accelerate the vehicle to avoid additional gunfire. GARZA subsequently fled westbound into an alley north of Pico Blvd. and west of San Julian St. LAPD Officers discovered the gunfire had struck the vehicle's front tire, rendering it inoperable. LAPD Officers radioed for assistance and included the suspect description, last known direction of travel and mode of travel.

11. LAPD Officers Franquez and Lopez-Vega, in full police uniform and in a marked police vehicle, were in the area of Olympic Blvd. and Wall St., working the same enforcement detail as the aforementioned LAPD Officers. They responded to the broadcast for assistance and proceeded to drive southbound on Wall St. from Olympic Blvd. They located GARZA traveling northbound on the west curb of Wall St. near 11th St. ---

approximately four street blocks from the location of the shooting. The officers then gave commands to GARZA to stop. GARZA ignored the officers' commands and proceeded to turn westbound on Olympic Blvd. While pursuing GARZA, Officer Franquez heard a sound consistent with something metallic, while Officer Lopez-Vega saw GARZA manipulating the black satchel bag with his left hand. GARZA was subsequently taken into custody.

12.  After detaining GARZA, LAPD Officers retraced GARZA's path of flight. At 122 East Olympic Blvd., under a metal railing, LAPD Officers recovered a Glock-style, privately manufactured, 9mm pistol with one round of 9mm ammunition loaded in the chamber of the pistol. Near the firearm, Officers also located a .40 Caliber magazine that was loaded with three additional rounds of 9mm ammunition. A spent 9mm shell casing and unfired 9mm round of ammunition were recovered from the area of the shooting.

### B. Identification of GARZA

13.  Officers Cordero, Burgos and Clay, the victim officers, were transported to the location where GARZA was taken into custody. Each officer positively identified GARZA as the individual who shot at them.

### C. Post-Arrest interview of GARZA

14.  LAPD Detectives Farell and Byers conducted a custodial interview of GARZA following his arrest. GARZA waived his <u>Miranda</u> rights and stated he had left his mother's house and was riding his bicycle on Pico Blvd. GARZA stated he had been with another individual whom he only described as his "ghost friend,"

but that they separated after he noticed a "truck" pulling by them. GARZA denied shooting at anyone and refused to provide a description of the "ghost friend." GARZA stated he used methamphetamine three or four days prior to the interview. GARZA admitted to having a "fanny" style bag that he sometimes will sling around his neck.

    **D.    Surveillance Camera Footage Shows GARZA Shooting at Officers**

    15.  Based on information from investigating LAPD detectives, LAPD Detectives recovered and reviewed surveillance camera footage from 1226 San Julian Street, Los Angeles, California, that depicts the approximate time of the shooting. LAPD Detectives reported that the surveillance video depicts an individual matching GARZA's description riding a bicycle without a light northbound on San Julian St. from Pico Blvd. The individual stops in the middle of San Julian St., straddles the bicycle and waits. As the plain clothes officers' Toyota Rav 4 vehicle crosses San Julian St. eastbound from Pico Blvd., what appears to be a muzzle flash can be seen coming from an individual, who then mounts the bicycle and rides off out of frame.

    **E.    GARZA Has Multiple Felony Convictions and a Domestic Violence Misdemeanor Conviction**

    16.  On or about July 17, 2024, I reviewed GARZA's criminal history obtained from the California Law Enforcement Telecommunications System ("CLETS") and National Crime Information Center ("NCIC") databases and other Bureau resources and learned that GARZA has previously been convicted of the

following felony crimes punishable by a term of imprisonment exceeding one year and also one misdemeanor domestic violence conviction:

    a.   On or about October 12, 2010, Felon in Possession of a Firearm, in violation of California Penal Code Section 12021(e), a felony, in the Superior Court of the State of California, County of Los Angeles, in case number BA375586.

    b.   On or about March 11, 2011, GARZA was convicted of being a Felon in Possession of a Firearm, in violation of California Penal Code 12021(a)(1), a felony, in the Superior Court of the State of California, County of Los Angeles, in case number PA06988101.

    c.   On or about May 4, 2012, GARZA was convicted of Battery on a Spouse/Ex-Spouse, a misdemeanor, in violation of California Penal Code 243(e)(1), in the Superior Court of the State of California, County of Los Angeles, in case number LAM2FF0105001.

    d.   On or about July 24, 2013, GARZA was convicted of Possession of a Controlled Substance, in violation of California Health and Safety Code 11377(A), a felony, in the Superior Court of the State of California, County of Los Angeles, in case number BA41193701.

    e.   On or about July 29, 2013, GARZA was convicted of Possession of a Controlled Substance, in violation of California Health and Safety Code 11377(A), a felony, in the Superior Court of the State of California, County of Los Angeles, in case number VA13099201.

    f. On or about March 6, 2015, GARZA was convicted of Evading a Peace Officer with Disregard for Safety, in violation of California Vehicle Code 2800.2, a felony, in the Superior Court of the State of California, County of Los Angeles, in case number VA138362.

    g. On or about August 31, 2017, GARZA was convicted of Felon in Possession of a Firearm, in violation of Title 18 United States Code § 922(g)(1), a felony, in the District of Colorado in case number 1:17-CR-00049-REB.

  **F.** **Interstate nexus**

  17. On or about July 18, 2024, based on discussions, I know that an ATF Interstate Nexus Expert examined photographs of the ammunition and spent shell casing and determined that of the five live rounds and one spent shell casing of 9mm ammunition, four had head stamp "9mm LUGER CBC," one had head stamp "S&B 20 9x19," and one had headstamp "9mm LUGER PMC." The Nexus Expert determined that these live rounds and spent shell casing are ammunition as defined under 18 U.S.C. § 921(a)(17)(A). The Expert also determined that the three live rounds and one spent shell casing with the "CBC" head stamp were manufactured by Companhia Brazileira in Brazil, the round with head stamp "S&B" was manufactured by Sellier & Bellot in the Czech Republic, and the round with head stamp "PMC" was manufactured in Nevada and/or South Korea.

  18. It is the opinion of the Nexus Expert that for this ammunition to be recovered in California, it had to travel in international and/or interstate commerce.

## V. CONCLUSION

19. For the foregoing reasons, there is probable cause to issue the requested complaint and arrest warrant.

Attested to by the applicant,
Special Agent Hugo Pang, in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 18th day of
July, 2024.

_____
HONORABLE STEVE KIM
UNITED STATES MAGISTRATE JUDGE